## BURTON v. NORWICH UNION INDEMNITY INS. CO.*
### No. 4479.

Court of Appeal of Louisiana. Second Circuit.

March 31, 1933.

*Rehearing denied April 28, 1933.

John G. Gibbs and Henry F. Turner, both of Shreveport, for appellant.

Thatcher, Browne, Porteous & Myers, of Shreveport, for appellee.

DREW, Judge.

Plaintiff instituted this suit under the Workmen's Compensation Act of Louisiana (Act No. 20 of 1914 and amendments thereto), claiming compensation in the sum of 65 per cent. of his weekly wage for a period not exceeding 400 weeks, alleging total permanent disability.

It is admitted that plaintiff was injured in an accident while in the employ of his employer, who was insured by defendant, and that compensation was paid at the rate of 65 per cent. of his weekly wage for a period of thirteen weeks, at which time plaintiff had fully recovered from the injuries received in the accident.

Plaintiff was being transported from the place of work to his home by his employer, as a part of the contract of employment, and, after the truck had arrived in the city of Shreveport, it was run into by a car. Plaintiff was riding with his feet hanging off the truck, and was struck by the car and received an injury to his right foot. He was immediately given treatment for his injured foot, and it had entirely healed at the end of thirteen weeks. His foot was sprained and bruised in the accident, but there were no broken bones. Plaintiff does not contend that the foot has not healed, but contends that he is now suffering from paralysis of the legs and arms, which was brought on from the injury to the foot.

It is clear from the record as made up that there is no causal connection between the injured foot and the alleged paralysis of the legs and arms, unless it is due to a mental condition brought on by worry over the injury to the foot. The symptoms are all subjective, and there are no objective symptoms of paralysis. A number of reputable doctors examined plaintiff and found his general physical condition good. They found no causal connection between the injured foot and the alleged paralysis, and were of the opinion, if he had paralysis, it was due to hysteria, a condition of the nervous system which might have been brought on by worry over the injured foot and other things. These doctors are not neurologists, and therefore referred plaintiff to neurologists.

The sole question now is, Is plaintiff affected with traumatic hysteria, causing paralysis of the legs and arms, and has the alleged present condition of plaintiff a causal connection with the foot injury?

The majority of the doctors admit the causal connection is far-fetched and believe plaintiff to be a malingerer. The two neu-

898

rologists who examined plaintiff disagree as to his condition. Dr. Young diagnosed his case as traumatic hysteria, produced by the foot injury. Dr. Kerlin diagnosed his case to the contrary, and found him to be a malingerer. Dr. Kerlin's testimony is plain, and he shows the absence of all symptoms which plaintiff would necessarily have if he were suffering from traumatic hysteria and paralysis. His testimony is very strongly corroborated by the other doctors who examined plaintiff, and especially by Dr. Boyce, who gave tests to plaintiff out of the courtroom and during the trial, in the presence of the court, which convinced Dr. Boyce that plaintiff was a malingerer and was not suffering with traumatic hysteria or paralysis.

The lower court took the testimony of Dr. Kerlin, no doubt being influenced by the tests made on plaintiff in his presence, and rejected the demands of plaintiff.

The condition plaintiff claims to have is certainly beyond the scope of lay witnesses. The symptoms are all subjective, and we are forced to determine his condition upon the testimony of the doctors, and more weight must necessarily be given the testimony of the neurologists, due to the fact that his alleged condition is a mental or nervous condition. The most convincing testimony of the neurologists is against plaintiff's contention, and this view is corroborated very strongly by the other doctors.

It is possible that plaintiff is in the condition he claims, and barely probable, but the great preponderance of the testimony is against his contention.

The lower court not only heard the doctors testify, but saw the plaintiff and the tests made on him in open court. He was in a better position to pass upon this question than we are. He found that plaintiff had failed to establish his case, and we are unable to find any error in that decision.

It is therefore affirmed, with costs.